Filed 11/19/13  P. v Valentin CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEREMY VALENTIN,<br><br>    Defendant and Appellant. | B244615<br><br>(Los Angeles County<br>Super. Ct. No. NA091099) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles D. Sheldon, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner and Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jeremy Valentin appeals from the judgment in which a jury convicted him of one count of second degree robbery in violation of Penal Code section 211,[1] a felony. The jury also found true the allegation that appellant personally used a firearm in violation of section 12022.53, subdivision (b). In a bifurcated trial, the trial court found true that appellant had served four prior prison terms pursuant to section 667.5, subdivision (b). The trial court sentenced appellant to a prison term of 13 years, consisting of the midterm of three years on the robbery count plus 10 years on the firearm enhancement. The trial court struck the prior prison terms.

Appellant contends that the trial court abused its discretion by precluding him from presenting expert testimony on eyewitness identification. We affirm.

**FACTS**

**Prosecution Case**

On December 26, 2011 around 7:30 p.m., Sergio Caraveo (Caraveo), the victim, was running in his neighborhood in San Pedro. Before stopping to drink from a water fountain at the intersection of South Crescent Avenue and West 21st Street, he saw appellant and another man sitting on the front porch of a house on South Crescent Avenue. When he finished drinking, Caraveo started stretching. Appellant grabbed Caraveo's shoulder and told him he had a gun. Appellant held a gun to the right side of Caraveo's head and ordered him to empty his pockets. Appellant then turned Caraveo around, so that they were facing each other about one foot apart. A streetlight was on, and Caraveo could see appellant's face and that appellant had acne scars. Appellant was wearing blue jeans, a black jacket and a red hat.

Caraveo responded that he did not have anything in his pockets because he had been running. Appellant said, "I don't give a fuck where you just came from." Caraveo emptied his pockets and gave appellant his iPod, which was Caraveo's Christmas present from the prior day. Appellant took the iPod and returned to the house

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

where Caraveo had seen him on the porch. The man who had been with appellant on the porch acted as a lookout.

Caraveo went home, then drove back to South Crescent Avenue with his older brother and his cousin so that he could get the correct address of the house for the police. When he saw appellant and the other man on the porch, Caraveo said to his brother, "that was them." While Caraveo waited for the police to arrive, appellant left the house on South Crescent Avenue and went through an alley. The other man also left the house.

Appellant was arrested on January 4, 2012, at the house on South Crescent Avenue while police were investigating a different incident. Without hesitation, Caraveo identified appellant in a six-pack photographic lineup on January 11, 2012.

**Defense Case**

Appellant testified that on December 26, 2011, he was staying at the South Crescent Avenue house, which his friend Kim Larsen (Larsen) was renting. Between 6:00 and 7:00 p.m., appellant was in the house having sex with a woman named "Bonnie." When appellant started to leave the house sometime after 7:00 p.m., he walked past Daniel Balderrama (Balderrama) and a man he did not know, who were sitting on the front porch of the house. A car pulled up, and two people started shouting about how their brother had just been robbed and that they wanted to fight somebody to retrieve what was stolen. Balderrama and the other man ran inside the house. Appellant's ride showed up and he left to go to dinner. He eventually met Larsen at a nearby bar, and returned home around 2:00 a.m. Appellant was wearing plaid shorts and a white T-shirt the day of the robbery.

Larsen saw Balderrama run into her home carrying an iPod. Balderrama was wearing a t-shirt, pants and a red hat with the letter "B" on it.

During cross-examination, the defense investigator conceded that Caraveo had identified appellant as the robber, and that Caraveo stated that Balderrama was not the robber when shown a picture of Balderrama.

3

## DISCUSSION

Appellant contends that the trial court abused its discretion by precluding him from presenting expert testimony on eyewitness identification, given that his defense was mistaken identity.

## The Trial Court Did Not Abuse its Discretion in Precluding Expert Eyewitness Identification Evidence

### A. *Procedural History*

Prior to trial, appellant moved for the appointment of Dr. Robert W. Shomer, an eyewitness identification expert. The trial court granted the motion. Appellant then moved for additional funds to compensate Dr. Shomer for his expected testimony, and the trial court granted the motion. The prosecution then filed a motion to exclude Dr. Shomer's testimony on the grounds that it would be irrelevant and prejudicial. The trial court granted the motion, stating: "[J]urors are smart, [a] very high percentage of them are smart. [¶] I have had 1,200 trials. I know that from personal experience in talking to them after the trial as well as during the voir dire. . . . [¶] At the end of the case when all the evidence is in, [the defense] can argue things that have to do with whether the ID is any good. [¶] And so you are covered in that respect . . . ."

### B. *Applicable Law*

"When an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony." (*People v. McDonald* (1984) 37 Cal.3d 351, 377 (*McDonald*), overruled on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896.) Our Supreme Court later stated, "*McDonald* does not apply when an eyewitness identification is 'substantially corroborated by evidence giving it independent reliability.'" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 290–291.) The *McDonald* court cautioned that it did not intend to open the flood gates to expert testimony on psychological factors

4

affecting eyewitness testimony, and expected that "such evidence will not often be needed." (*McDonald*, *supra,* at p. 377.) The decision to admit or exclude eyewitness expert testimony is a matter within the trial court's discretion and is reviewed for an abuse of discretion. (*Ibid*.)

### C. Analysis

The trial court did not abuse its discretion in precluding the expert evidence on eyewitness identification for three reasons.

First, contrary to appellant's position, the victim Caraveo's eyewitness identification of appellant was corroborated by other evidence. Under *McDonald*, this is reason alone to exclude expert testimony on the matter. (*McDonald, supra*, 37 Cal.3d at p. 377.) Caraveo's brother testified that when he and Caraveo returned to the South Crescent Avenue house, Caraveo immediately identified appellant. Appellant was later arrested at the house, indicating that he indeed lived there. Though Larsen implicated Balderrama, she testified that she saw an iPod, confirming that Caraveo's device was stolen. Also, when shown a photograph of Balderrama, who the defense claimed could be liable for the robbery, Caraveo did not identify him as the robber, and instead maintained that appellant was the individual who stole his iPod at gunpoint.

Second, Caraveo's eyewitness identification of appellant was far more reliable than that in *McDonald,* where our Supreme Court held that the trial court had improperly excluded Dr. Shomer's testimony. In M*cDonald*, where the victim was shot in a busy intersection at rush hour, only four of the prosecution's seven eyewitnesses identified the defendant in the courtroom, and their testimony revealed that they were not confident about their identifications. (*McDonald, supra*, 37 Cal.3d at pp. 356–358.) One eyewitness even unequivocally testified that the defendant was not the shooter. (*Id*. at p. 358.) None of the witnesses made a positive unequivocal identification during the pretrial photographic lineup. In addition, parked cars in front of the altercation and cars driving past the intersection created a limited and blocked view of the murder. (*Id*. at p. 356.) No other evidence connected the defendant to the crime. (*Id*. at p. 360.) The defense presented six witnesses who testified that at the time of the shooting the

5

defendant was in another state visiting a relative, and this alibi was corroborated by mail and telephone records. (*Ibid*.)

Here, Caraveo identified appellant immediately after the robbery when he went back to South Crescent Avenue with his brother. He also identified appellant in a six-pack photographic lineup two weeks later, and his identification was unequivocal and made without hesitation. When shown a photograph of Balderrama, Caraveo stated that Balderrama was not the man who robbed him. Caraveo also identified appellant in court. Additionally, Caraveo's view of appellant during the robbery was not obstructed. Caraveo was standing face-to-face with appellant about one foot apart. The overhead street light was on, allowing Caraveo to see appellant's distinguishing facial features, such as acne scars. The California Supreme Court cited these same reasons—close proximity, lightened area, and positive identifications—in finding eyewitness identification evidence to be stronger than that in *McDonald*. (*People v. Sanders* (1995) 11 Cal.4th 475, 509 [affirming exclusion of an eyewitness identification expert in a case in which a defendant killed four people while robbing a restaurant].)

Finally, expert eyewitness identification testimony was not necessary in this case to explain the psychological factors that could have affected the reliability of Caraveo's identification. Appellant cites such factors as fear, fatigue, stress, poor lighting, memory decay and age difference as factors necessitating expert testimony.[2] We agree with the People that these psychological factors are issues ordinary jurors can decipher and understand without the aid of an expert. Ordinary people understand that being robbed at gunpoint is a stressful and scary event; poor lighting can reduce the ability to see; fatigue can weaken one's ability to think clearly; memory fades over time; and younger people tend to make less reliable identifications. Testimony from an expert would not have added anything to such common knowledge. (See *People v. Plasencia* (1985) 168 Cal.App.3d 546, 555, where this division previously held that Dr. Shomer's testimony was not relevant, stating "The jury did not need edification on the obvious fact that an

---

[2] At the time of the crime, Caraveo was 17 years old and appellant was 32 years old.

6

unprovoked gang attack is a stressful event or that the passage of time frequently [affects] one's memory.")  Further, a "particularly important" reason expert testimony was required in *McDonald* was that the identifications were cross-racial.  (*McDonald, supra,* 37 Cal.3d at p. 376.)  That was not an issue here.

Additionally, the jury was instructed with CALJIC No. 2.92, which identifies various factors that could affect the accuracy of a witness's identification of the perpetrator, including the stress the witness was under at the time of observation, the witness's capacity to make an identification, whether the witness identified the perpetrator in a photographic lineup, the passage of time, whether the witness was certain about the identification, and "[a]ny other evidence relating to the witness'[s] ability to make an identification."  Testimony from an expert would not have added to these factors.  (See *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 725 [finding no error in exclusion of expert evidence where CALJIC No. 2.92 was given].)  Even the *McDonald* court recognized that such jury instructions would focus the jury's attention toward any reliability issues regarding eyewitness identification.  (*McDonald, supra*, 37 Cal.3d at p. 377, fn. 24.)

We conclude that the trial court did not abuse its discretion in precluding appellant from presenting expert eyewitness identification evidence.[3]

---

[3]  We therefore find no merit to appellant's contention that his constitutional rights were violated.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.[*]
FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8